d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARIO ROSALES ET AL, Plaintiff | CIVIL DOCKET NO. 1:22-CV-05838 |
| VERSUS | JUDGE EDWARDS |
| JIM LEWIS ET AL, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) filed by Defendants Samuel Terrell, Ronney Howard, and the City of Alexandria (the "City") (collectively, "City Defendants"). ECF No. 70. Defendant Jim Lewis also filed a Motion for Judgment on the Pleadings. ECF No. 78.

Because the Complaint states a facially plausible claim that officers lacked reasonable suspicion to detain Plaintiffs, and because qualified immunity does not apply, both Motions for Judgment on the Pleadings should be **DENIED**.

I. Background

In the Complaint, Plaintiffs Mario Rosales ("Rosales") and Gracie Lasyone ("Lasyone") (collectively "Plaintiffs") named as defendants Officers Jim Lewis and Samuel Terrell in their individual and official capacities; former Chief of Police Ronney Howard in his official capacity; and the City of Alexandria (who employed Officers Lewis and Terrell and Chief Howard). Plaintiffs seek both declaratory and

1

injunctive relief, as well as damages under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' First and Fourth Amendment rights.

Defendants answered, and subsequently, the City Defendants and Lewis filed their motion. ECF No. 70, 78.

## II. Law and Analysis

### A. Rule 12(c) Standard

"After the pleadings are closed—but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022). Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1]

A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020).

---

[1] In conducting this review, the Court accepts "all well-pled facts as true and construe[s] them in the light most favorable to the plaintiff." *Vardeman v. City of Houston*, 55 F.4th 1045, 1049 (5th Cir. 2022). However, the Court does not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Anokwuru v. City of Houston*, 990 F.3d 956, 962 (5th Cir. 2021). The complaint must allege facts "plausibly suggesting" unlawful conduct such that the allegations are no longer in "neutral territory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### B. Qualified Immunity

The United States Court of Appeals for the Fifth Circuit has clarified that the same standards apply when a court considers a motion to dismiss or for judgment on the pleadings and, as here, the opposing party raises the defense of qualified immunity:

> When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity. The pleading standards remain the same when a motion to dismiss is based on qualified immunity. The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and would overcome their qualified immunity defense. At the motion to dismiss stage, it is the plaintiff's burden to demonstrate that qualified immunity is inappropriate.

*Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (internal citations and quotations omitted). The court also detailed the standards governing our qualified immunity analysis:

> The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
>
> We undertake a two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.
>
> Courts exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. The Supreme Court has repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular

>conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Id.* (internal citations and quotations omitted).

Accordingly, the analyses of each count below necessarily includes findings about both plausibility and about whether Plaintiff's allegations, if proved, would overcome the qualified immunity defense.

### C. The *Terry* Framework

"Traffic stops are deemed seizures for the purposes of the Fourth Amendment." *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005), cert. den., 546 U.S. 1222 (2006). "The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968)." *Id.* Under the *Terry* framework, a court must ask whether an officer's action was: (1) "justified at its inception," and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quoting *Terry,* 392 U.S. at 19-20).

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *Id.* As the Fifth Circuit has explained,

>[r]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." Reasonable suspicion is a low threshold; it is not probable cause. Certainly, then, if officers have probable cause to believe that a traffic violation has occurred, then there is also reasonable suspicion to stop the vehicle.

*United States v. Walker*, 49 F.4th 903, 907 (5th Cir. 2022) (internal citations and quotations omitted). "A finding of reasonable suspicion is judged after considering the totality of the circumstances." *United States v. Grant*, 349 F.3d 192, 197 (5th Cir. 2003).

### D. The Motions for Judgment on the Pleadings

The Complaint contains six separate counts, four for different types of alleged unreasonable searches and seizures, and two arising from officers' alleged refusal to allow Plaintiffs to record the encounter.

#### 1. Count 1 – Initial Stop

For a traffic stop to be justified at its inception, an officer must have "objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Lopez–Moreno*, 420 F.3d at 430. Here, the Complaint alleges that Mario signaled his left turn and legally turned left at a green light. Defendants claim the stop was justified under Louisiana Revised Statute 32:104, which requires signaling "continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

The attached video evidence appears to show Mario activating his turn signal before turning. The video evidence does not definitively establish whether Mario signaled for the required 100 feet, however. Viewing the allegations in the light most favorable to Plaintiffs, and accepting the factual assertion that Mario did use his turn signal, the Complaint states a facially plausible Fourth Amendment claim challenging the validity of the initial traffic stop. The particular merits of the claim,

5

or questions of reasonable suspicion based on ambiguous evidence cannot be resolved at the pleadings stage.

Moreover, the law was clearly established that officers cannot stop motorists without reasonable suspicion of criminal activity. As this Court noted in the underlying case, "it was well established at the time of the traffic stop that the Fourth Amendment does not permit the fabrication of traffic offenses against innocent persons as a pretextual reason to detain them, and no reasonable officer would believe otherwise." *See generally Bates v. Normand*, 703 F. Supp. 3d 775, 790 (W.D. La. 2023). Plaintiffs have thus pleaded sufficient facts to establish that this claim is both plausible (meaning, if proved, adequate to warrant relief) and sustainable (meaning that it could potentially overcome the qualified immunity defense. And this finding also indicates that, as to all remaining counts, the same issues must be considered separately.

### 2. Count 2 – Extension of Stop

The Fourth Amendment prohibits prolonging a traffic stop beyond the time reasonably required to address the traffic violation and attendant safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 357 (2015). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354.

The Complaint alleges that Officers Lewis and Terrell improperly expanded the stop to: (1) investigate drug crimes through extensive questioning, (2) frisk Mario without reasonable suspicion he was armed and dangerous, and (3) "coercing" Mario

to empty his pockets, and therefore to search them, without a warrant. This claim is both plausible and sustainable. Even assuming that reasonable suspicion existed for the initial stop, these allegations state a plausible claim that the officers unlawfully expanded the stop's scope and duration (in alleged violation of what would be a clearly established right).

   3. <u>Count 3 and 5 - *Terry* Frisk and Search</u>

To appropriately conduct a frisk under *Terry*, officers must have reasonable suspicion that the suspect is "armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

The Complaint alleges that, in following "unconstitutional policies," officers lacked reasonable suspicion to believe Mario was armed and dangerous. As to this point, the present record does not support dismissal under Rule 12(c). noting that he truthfully disclosed the location of his firearm and demonstrated no threatening behavior. Defendants argue that ammunition was observed in plain sight and Mario's initial lack of forthrightness justified the frisk.

Similarly, the alleged search of Mario's pockets—by directing him to empty them—raises Fourth Amendment concerns. Whether Mario's compliance constituted valid consent involves factual questions about the totality of circumstances that are inappropriate for resolution at the pleadings stage.

   4. <u>Counts 4 and 6 – Recording</u>

It is well-settled that the First Amendment protects the right to record police officers performing their official duties in public, subject only to reasonable time,

place, and manner restrictions. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017 ("First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."). "'If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim.'" *Rincon v. City of Laredo, Texas*, No. 24-40168, 2025 WL 603883, at *4 (5th Cir. Feb. 25, 2025) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).

The Complaint alleges that Officers Lewis and Terrell prohibited Mario and Gracie from recording the encounter, despite requests and assurances that recording would not interfere with officers' activities. If proved, and assuming that other circumstances do not alter the analysis and that plaintiffs demonstrate they could use phones safely and non-disruptively, this instruction may not have satisfied the requirements to avoid a First Amendment claim. Thus, at this stage, Plaintiffs have asserted a plausible and sustainable First Amendment claim.

### III. Conclusion

Accordingly, IT IS RECOMMENDED that the Motion for Judgment on the Pleadings filed by Samuel Terrell, Ronney Howard, and the City of Alexandria (ECF No. 70) and the Motion for Judgment on the Pleadings filed by Jim Lewis (ECF No. 78) be DENIED.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, August 29, 2025.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE